IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TYRECE D. COLEMAN, #R55084, ) | |
| ) | |
|       **Plaintiff,** ) | |
| ) | |
| vs. ) | Case No. 25-cv-00066-RJD |
| ) | |
| ILLINOIS DEPT. of CORRECTIONS, ) | |
| LAWRENCE CORRECTIONAL CENTER, ) | |
| LATOYA HUGHES, ) | |
| JEREMIAH BROWN, ) | |
| WEXFORD HEALTH SOURCES, INC., ) | |
| MR. BABICH, ) | |
| LORIE CUNNINGHAM, ) | |
| KATIE BICE, P. MYERS, ) | |
| CARISSA LUKING, ) | |
| ADMINISTRATIVE REVIEW BOARD, ) | |
| and MR. EWRING, ) | |
| ) | |
|       **Defendants.** ) | |

# MEMORANDUM AND ORDER

**DALY, Magistrate Judge:**

    Plaintiff Tyrece D. Coleman, an inmate of the Illinois Department of Corrections ("IDOC") currently incarcerated at Lawrence Correctional Center, filed the instant lawsuit pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights and violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*[1] (Doc. 1). He claims defendants failed to treat his pain from several medical conditions and failed to provide accommodations for his hearing impairment and mobility impairments. (Doc. 1). Plaintiff seeks monetary damages and injunctive relief. (Doc. 1, p. 8).

---

[1] Although Plaintiff mentions only the ADA, "the [Rehabilitation Act ("RA"), 29 U.S.C. § 701, *et seq.*] is available to him, and courts are supposed to analyze a litigant's claims and not just the legal theories that he propounds, especially when he is litigating *pro se*." *Norfleet v. Walker*, 684 F.3d 688, 690 (7th Cir. 2012) (internal citations omitted).

1

This case is now before the Court for preliminary review of the Complaint under 28 U.S.C. § 1915A,[2] which requires the Court to screen prisoner Complaints to filter out nonmeritorious claims. 28 U.S.C. § 1915A(a). Any portion of the Complaint that is legally frivolous, malicious, fails to state a claim for relief, or requests money damages from an immune defendant must be dismissed. 28 U.S.C. § 1915A(b).

## The Complaint

Plaintiff makes the following allegations in the Complaint (Doc. 1): Plaintiff was transferred to Lawrence on November 1, 2023 (Doc. 1, p. 10). He has a hearing impairment and has received accommodations in the past including hearing aids (Doc. 1, pp. 10, 30-32). He also has mobility impairments due to having a rod and screws in his lower back and chronic pain in that area, nerve damage in his left leg and foot, a bad right knee, carpal tunnel syndrome in his right hand and wrist, and arthritis and a bulging disc in his neck. Plaintiff was issued hand, wrist, and knee braces for these conditions in previous institutions (Doc. 1, pp. 10, 55, 62). Plaintiff is a non-reader and has an educational learning disability. He takes psychiatric medication for PTSD, stress, depression, and bipolar disorder (Doc. 1, pp. 10, 131).

After arriving at Lawrence, Plaintiff made numerous requests for assistance with his hearing impairment. He was specifically seeking the accommodations of a CL-20 headphone and a vibrating watch (Doc. 1, pp. 11, 66-70, 74, 78-83). Without those devices, Plaintiff missed calls for meals, commissary, health care passes, and law library. Plaintiff sought an audiological evaluation as well as medical attention for his mobility issues. A year passed without adequate responses to Plaintiff's requests (Doc. 1, pp. 11, 15).

---

[2] The Court has jurisdiction to screen the Complaint due to Plaintiff's consent to the full jurisdiction of a Magistrate Judge (Doc. 9), and the limited consent to the exercise of Magistrate Judge jurisdiction as set forth in the Memoranda of Understanding between this Court, Wexford Health Sources, Inc., and the IDOC.

Plaintiff sent numerous letters, request forms, and grievances to Defendant Cunningham (Lawrence Health Care Unit Administrator and ADA Coordinator) between January and July 2024, seeking care for his hearing and mobility impairments (Doc. 1, p. 14). Plaintiff showed his documents from Stateville Correctional Center, stating that he had received the CL-20 headphone while there, and requested a vibrating watch, however, Cunningham refused to provide those devices. Plaintiff had an audiological evaluation on July 24, 2024, which showed he needed a hearing aid (Doc. 1, p. 14). On that date, Plaintiff's hand and knee braces were confiscated, even though he had not been allowed to see an outside specialist regarding his need for those devices (Doc. 1, p. 15). As a result, Plaintiff's pain increased. Plaintiff's mother and fiancé personally spoke to Cunningham regarding his medical and ADA needs, to no avail (Doc. 1, p. 19).

Plaintiff similarly requested hearing accommodations from Katie Bice (Lawrence Assistant ADA Coordinator) between November 2023 and August 2024. Bice failed to provide any assistance and ignored his attempts to speak to her in person about his needs (Doc. 1, pp. 15-16). Bice thus caused Plaintiff to suffer emotional distress including anguish, anxiety, embarrassment, and humiliation.

Plaintiff saw Dr. P. Myers on June 19, 2024 regarding his need for mobility accommodation and pain relief (Doc. 1, p. 16). Myers refused to increase Plaintiff's pain medication and refused to renew the medical permits for his hand, wrist, and knee braces. Myers said Plaintiff's medical records from Stateville and Cook County Jail regarding his medical and ADA issues had not been forwarded to Lawrence; Plaintiff insisted those records should have followed him. Myers refused to provide Plaintiff with any accommodations until an outside specialist evaluated him. Myers put in a referral, but did not follow up, so Plaintiff's needs were not addressed for a year. Myers allowed prison security officers to confiscate Plaintiff's braces on

3

July 24, 2024, and Plaintiff received a disciplinary infraction for that incident. Plaintiff wrote to the IDOC and other officials seeking copies of his medical records (Doc. 1, pp. 19, 61).

Plaintiff had a call pass on December 13, 2024, to see Lawrence Nurse Practitioner Carissa Luking (Doc. 1, p. 18). However, the pass was cancelled and Luking failed to come to the cell house to see him, assess his pain level, or refer him to an outside provider. Many of Plaintiff's medical passes had been cancelled over the previous year. Plaintiff states he does not know who was responsible for cancelling and delaying his requests to be seen by a specialist (Doc. 1, p. 18).

Plaintiff's Counselor, Mr. Ewring, responded to Plaintiff's grievances over the above issues, but failed to obtain any relief for the cancellation of Plaintiff's medical passes or the delay in receiving accommodations for his hearing and mobility impairments or his ongoing pain (Doc. 1, pp. 18-19, 92-99).

IDOC Director Latoya Hughes failed to require her subordinates at Lawrence to comply with the ADA or to take action when Plaintiff filed grievances and wrote letters seeking help with his impairments and medical needs (Doc. 1, pp. 11-12). Lawrence Warden of Programs Jeremiah Brown failed to remedy Plaintiff's issues or require compliance with the ADA, despite Plaintiff's many complaints and grievances dating back to February 2024, as well as contacts from Plaintiff's family and friends (Doc. 1, p. 12-13). Regional Medical Director Babich likewise allowed his medical staff to deny Plaintiff his ADA accommodations and referrals to outside specialists (Doc. 1, pp. 12-13). Babich also allowed his staff to let Plaintiff's permits for hand, wrist, and knee braces expire, leading to the confiscation of those devices. The IDOC Administrative Review Board ("ARB") refused to address any of the issues Plaintiff raised in his grievances over the lack of accommodations and medical care, responding that the matters had been appropriately addressed at Lawrence (Doc. 1, p. 17).

Defendant Wexford Health Sources, Inc. ("Wexford") failed to ensure its medical staff would comply with the ADA, and Wexford employees failed to respond to Plaintiff's requests for adequate pain medication or mobility accommodations (Doc. 1, p. 12). The IDOC and the ARB failed to properly train and supervise their medical staff (Doc. 1, p. 20). These entities have policies, customs, and practices that deprive inmates at Lawrence due process in handling their grievances, hinder and delay the provision of ADA accommodations, allow deliberate indifference to inmates' medical needs, as well as allow other misconduct to occur. *Id.*

Plaintiff attaches numerous documents relating to his medical and disability-related needs (Doc. 1, pp. 30-158). Years ago, on July 27, 2021, a hearing test showed Plaintiff needed a hearing aid for his right ear (Doc. 1, p. 30-32). His left ear had no measurable hearing, so would not be improved with a hearing aid. Correspondence from Defendant Brown indicated as of October 1, 2024, Plaintiff had seen an audiologist and a referral was pending to an outside ear-nose-throat provider (Doc. 1, p. 59). Plaintiff had been issued a six-month permit at Stateville for right wrist support on October 16, 2023, before his transfer to Lawrence (Doc. 1, p. 62).

Plaintiff was issued a permit at Lawrence on November 22, 2023, for wrist and knee braces, valid to May 22, 2024 pending an evaluation (Doc. 1, p. 99). On October 15, 2024, he got a medical permit for hearing aids, a right knee brace, and for a low bunk and low gallery (Doc. 1, p. 157).

Based on the allegations in the Complaint, the Court designates the following claims in this *pro se* action:

Count 1: Eighth Amendment deliberate indifference to serious medical needs claim against all defendants for delaying and failing to provide necessary devices to accommodate Plaintiff's hearing impairment after his transfer to Lawrence on November 1, 2023.

Count 2: Eighth Amendment deliberate indifference to serious medical needs claim against all defendants for delaying and failing to provide assistance and/or devices to assist Plaintiff with his mobility

5

|  |  |
|---|---|
|  | impairments after his transfer to Lawrence on November 1, 2023. |
| Count 3: | Eighth Amendment deliberate indifference claim against Defendants Myers, Cunningham, and Luking for delaying and denying treatment for Plaintiff's chronic pain after his transfer to Lawrence on November 1, 2023. |
| Count 4: | Americans with Disabilities Act and/or Rehabilitation Act claim against defendants for failing to accommodate Plaintiff's hearing and mobility disabilities after his transfer to Lawrence on November 1, 2023. |
| Count 5: | Illinois state law medical negligence claim against Defendant Myers for breaching his duty of care to treat Plaintiff for his mobility impairments and ongoing pain. |
| Count 6: | Illinois state law claim for intentional infliction of emotional distress against Defendant Bice for ignoring Plaintiff's requests for assistance with his hearing impairment. |

Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.[3]

## Discussion

### Count 1

Prison officials and medical staff violate the Eighth Amendment's prohibition against cruel and unusual punishment when they act with deliberate indifference to a prisoner's serious medical needs. *Rasho v. Elyea*, 856 F.3d 469, 475 (7th Cir. 2017). To state such a claim, a prisoner must plead facts and allegations suggesting that (1) he suffered from an objectively serious medical condition, and (2) the defendant acted with deliberate indifference to his medical needs. *Id.* An objectively serious condition includes a condition that significantly affects an individual's daily activities, or which involves chronic and substantial pain. *Gutierrez v. Peters*, 111 F.3d 1364, 1373

---

[3] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face.").

(7th Cir. 1997). "Deliberate indifference is proven by demonstrating that a prison official knows of a substantial risk of harm to an inmate and either acts or fails to act in disregard of that risk." *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (internal citations and quotations omitted).

The allegations in the Complaint are sufficient for Plaintiff to proceed on the deliberate indifference claim in Count 1 against medical providers Cunningham and Bice. Plaintiff's hearing impairment significantly affected his daily activities. He claims he requested these individuals to provide him with hearing accommodations, yet they failed to do so over many months.

However, Plaintiff does not allege that he requested Myers or Luking to address his hearing impairment. As such, he fails to state a claim against them for deliberate indifference to that condition. Myers and Luking will be dismissed from Count 1 without prejudice.

Wexford is a corporation that employs Lawrence medical providers and provides medical care at the prison, but it cannot be held liable solely on that basis. A corporation can be held liable for deliberate indifference only if it had a policy or practice that caused the alleged violation of a constitutional right. *Woodward v. Corr. Med. Serv. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004). *See also Jackson v. Ill. Medi-Car, Inc.*, 300 F.3d 760, 766 n.6 (7th Cir. 2002) (private corporation is treated as though it were a municipal entity in a § 1983 action). While Plaintiff alleges generally that Wexford failed to require its staff to comply with the ADA, had policies or practices that resulted in deliberate indifference to inmates, and had other improper policies/practices, he includes no factual allegations describing how Cunningham, Bice, or other providers acted or failed to act because of a Wexford policy, practice, or custom. For these reasons, Wexford will be dismissed from Count 1.

Plaintiff cannot maintain an Eighth Amendment claim for damages against the Illinois Department of Corrections, because it is a state government agency. The same is true for Lawrence

Correctional Center and the Administrative Review Board, which are divisions of the IDOC. "[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). *See also Billman v. Ind. Dep't of Corr.*, 56 F.3d 785, 788 (7th Cir. 1995) (state Department of Corrections is immune from suit by virtue of Eleventh Amendment). The IDOC, Lawrence Correctional Center, and the Administrative Review Board will also be dismissed from Count 1.

Finally, the Complaint fails to state a deliberate indifference claim against Hughes, Brown, Babich, or Ewring. Each of these officials reviewed Plaintiff's grievances and/or complaints, but that is not enough for liability in a civil rights case. To be liable under § 1983, a defendant must be personally responsible for the violation of a constitutional right. *Taylor v. Ways*, 999 F.3d 478, 493 (7th Cir. 2021). A prisoner cannot maintain a claim against an official who merely reviewed the prisoner's grievance or appeal, but did not cause or participate in the alleged deprivation that gave rise to the grievance. *Owens v. Evans*, 878 F.3d 559, 563 (7th Cir. 2017). Further, because there is no supervisory liability in § 1983 cases, supervisors cannot be held responsible for the misconduct of their subordinates or for failing to ensure that subordinates properly carry out their jobs. *Horshaw v. Casper*, 910 F.3d 1027, 1029-30 (7th Cir. 2018); *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001).

To summarize, the deliberate indifference claim in Count 1 will proceed only against Cunningham and Bice. Defendant Warden Brown, in his official capacity only, will remain as a party for the purpose of implementing any injunctive relief that may be ordered. The claims against Brown in his individual capacity will be dismissed. Defendants IDOC, Lawrence Correctional Center, Hughes, Wexford, Babich, Myers, Luking, the Administrative Review Board, and Ewring will be dismissed from Count 1.

### Count 2

Under the Eighth Amendment standards outlined in Count 1, Plaintiff describes mobility impairments involving his back, neck, right knee, left leg and foot, and right hand and wrist, which constitute objectively serious medical conditions. He asserts that he requested assistance for these conditions from medical providers Cunningham and Myers, but they delayed or failed to provide Plaintiff with medical care or accommodations including the hand, wrist, and knee braces which had given Plaintiff some relief. Myers allegedly delayed his referral to an outside specialist, which Myers indicated was necessary before the braces could be approved. These allegations support the deliberate indifference claim in Count 2 against Cunningham and Myers.

The Complaint does not allege that Plaintiff asked Bice or Luking to address these mobility-related conditions, therefore he fails to state a deliberate indifference claim against them.

For the reasons discussed above in Count 1, Plaintiff fails to state a deliberate indifference claim against the IDOC, Lawrence Correctional Center, Hughes, Brown, Wexford, Babich, the Administrative Review Board, or Ewring, thus they will be dismissed from Count 2. Warden Brown will remain as a defendant, in his official capacity only, with reference to Plaintiff's request for injunctive relief.

Count 2 will proceed only against Cunningham and Myers.

### Count 3

Chronic and substantial pain constitutes an objectively serious medical condition. *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997). A delay in treating a painful condition can amount to deliberate indifference, if the delay exacerbated the injury or prolonged the inmate's pain. *See Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 661 (7th Cir. 2021); *Petties v. Carter*, 836 F.3d 722, 730-31 (7th Cir. 2016) (collecting cases); *Gomez v. Randle*, 680 F.3d 859,

865 (7th Cir. 2012).

Plaintiff alleges that Cunningham and Myers were aware of his severe pain from his various physical ailments, but failed to provide him with the hand, wrist, and knee braces to alleviate his pain. Plaintiff also claims that he asked Myers to provide him with pain medication, but Myers failed to do so. These allegations support the deliberate indifference claim in Count 3.

However, Plaintiff includes only one allegation against Luking – that she failed to visit him to assess his pain or refer him to an outside provider when his December 13, 2024 medical call pass was cancelled. It is not clear from that single incident whether Luking was aware of Plaintiff's pain yet denied him treatment or a referral, thus the Complaint fails to state a deliberate indifference claim against Luking.

Count 3 will proceed only against Cunningham and Myers. Luking will be dismissed without prejudice from Count 3.

### Count 4

Plaintiff's allegations are sufficient to allow him to proceed on an ADA and/or RA claim. However, this claim cannot proceed against individual defendants because individual employees of IDOC cannot be sued under the ADA or the RA. *Jaros v. Illinois Dep't of Corrs*, 684 F.3d 667, 670 (7th Cir. 2012). Instead, the proper defendant is the relevant state department or agency. *See* 42 U.S.C. § 12131(1)(b); *Jaros*, 684 F.3d at 670, n. 2 (individual capacity claims are not available; the proper defendant is the agency or its director (in his official capacity)). Plaintiff has correctly named the IDOC as a defendant and Count 4 will proceed only against the agency. The remaining defendants will be dismissed from this claim.

### Count 5

In addition to Plaintiff's claim that Myers was deliberately indifferent to his medical

conditions and pain, he asserts that Myers' failure to provide adequate medical care or pain relief for his back condition, nerve damage, weak knee, carpal tunnel, arthritis, and bulging disc amounted to medical negligence (Doc. 1, p. 16). This state law claim derives from the same facts as Plaintiff's Eighth Amendment claim in Count 2 and will proceed.[4] 28 U.S.C. § 1367(a); *Wisconsin v. Ho-Chunk Nation*, 512 F.3d 921, 936 (7th Cir. 2008).

### Count 6

Under Illinois law, a plaintiff claiming intentional infliction of emotional distress must demonstrate that the defendant(s) intentionally or recklessly engaged in "extreme and outrageous conduct" that resulted in severe emotional distress. *Somberger v. City of Knoxville, Ill.*, 434 F.3d 1006, 1030 (7th Cir. 2006); *see Lopez v. City of Chi.*, 464 F.3d 711, 720 (7th Cir. 2006). The tort has three components: (1) the conduct involved must be truly extreme and outrageous; (2) the actor must either intend that her conduct inflict severe emotional distress, or know that there is at least a high probability that her conduct will cause severe emotional distress; and (3) the conduct must in fact cause severe emotional distress. *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988).

Plaintiff asserts that Bice ignored his attempts to talk to her about his hearing accommodations as she walked through his housing area, apparently on more than one occasion. Bice had been a mental health provider, so Plaintiff claims she was aware that ignoring him when he was talking to her would cause him emotional distress. These allegations indicate that Plaintiff did suffer emotional distress, and might satisfy the second requirement above that Bice intended or knew that her conduct would be severely distressing. However, Bice's alleged conduct does not rise to the level of truly "extreme and outrageous." Accordingly, Count 6 will be dismissed without

---

[4] Plaintiff must comply with the statutory requirement for an affidavit stating that "there is a reasonable and meritorious cause" for litigation against Myers and a physician's report to support the assertions in the affidavit, pursuant to 735 ILCS § 5/2-622. *See Young v. United States*, 942 F.3d 349 (7th Cir. 2019).

prejudice for failure to state a claim upon which relief may be granted.

## Injunctive Relief

Because the Complaint includes a request for injunctive relief, Lawrence Correctional Center Warden Jeremiah Brown, in his official capacity only, will remain as a defendant with regard to the request for injunctive relief. *See Gonzales v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011) (holding warden is proper defendant for injunctive relief claim as he would be responsible for ensuring that any injunctive relief would be carried out).

## Official Capacity Claims

Plaintiff raises claims against each defendant in his or her individual and official capacities. The ADA and RA claims are properly brought against the IDOC, and the claims for injunctive relief are proper against Lawrence Warden Brown in his official capacity. However, Plaintiff's claims for monetary damages may only be pursued against state officials in their individual capacities. *Brown v. Budz*, 904 F.3d 904, 918 (7th Cir. 2005); *Shockley v. Jones*, 823 F.2d 1068, 1070 (7th Cir. 1987). Accordingly, the official capacity claims against the other individual defendants are dismissed without prejudice.

## Pending Motion

Plaintiff's renewed Motion for Recruitment of Counsel (Doc. 14) is **DENIED** without prejudice. There is no constitutional or statutory right to counsel in federal civil cases. *Romanelli v. Suliene*, 615 F.3d 847, 851 (7th Cir. 2010). In determining whether to recruit counsel, the Court considers whether the *pro se* party has made reasonable efforts to secure counsel on his own and his ability to litigate the case on his own. *See Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007).

When Plaintiff's first counsel motion was denied, the Court instructed him to provide one additional rejection letter from an attorney, to demonstrate his efforts to find counsel on his own

(Doc. 12). Plaintiff failed to do so; instead, he submitted the same letter, from July 2024, that he submitted with his earlier motion (Doc. 3, p. 10). He therefore has not met this initial requirement.

While Plaintiff's motion indicates he may have difficulty litigating this case on his own as it proceeds, due to his educational and literacy deficiencies, this Order reflects that his Complaint survives the initial merits review in large part. In addition, recruitment of counsel at this early stage is premature. *See Kadamovas v. Stevens*, 706 F.3d 843, 845 (7th Cir. 2013) ("[U]ntil the defendants respond to the complaint, the plaintiff's need for assistance of counsel...cannot be gauged."). If Plaintiff encounters difficulties in self-representation in the future, he may refile his motion seeking recruitment of counsel. Any renewed motion must include at least one *new* rejection letter from an attorney.

## Disposition

The Complaint states colorable claims in Count 1 against Cunningham and Bice; in Counts 2 and 3 against Cunningham and Myers; in Count 4 against the Illinois Department of Corrections; and in Count 5 against Myers. Count 6 and the claims against Defendant Jeremiah Brown in his individual capacity are **DISMISSED** without prejudice. Defendants Lawrence Correctional Center, Latoya Hughes, Wexford Health Sources, Inc., Mr. Babich, Carissa Luking, the Administrative Review Board, and Mr. Ewring are **DISMISSED** without prejudice.

The Clerk shall prepare for the Illinois Department of Corrections, Lorie Cunningham, Katie Bice, P. Myers, and Warden Jeremiah Brown of Lawrence Correctional Center (official capacity only): (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service

of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the Defendant, and the Court will require the Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk and shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244 and Local Rule 8.2, Defendants need only respond to the issues stated in this Merit Review Order**.

Plaintiff is **ADVISED** that if judgment is rendered against him and the judgment includes the payment of costs under 28 U.S.C. §1915, he will be required to pay the full amount of the costs, even though his application to proceed *in forma pauperis* was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is further **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and the opposing parties informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

Finally, based on the allegations in the Complaint, the Clerk of Court is **DIRECTED** to **ENTER** the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

**IT IS SO ORDERED.**

**DATED:  April 1, 2025**

*s/ Reona J. Daly*
**REONA J. DALY**
**United States Magistrate Judge**

### Notice to Plaintiff

The Court will take the necessary steps to notify the Defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, Defendants will enter an appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the Defendants' Answer, but it is entirely possible that it will take **90 days** or more. When Defendants have filed their Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for Defendants before filing any motions, to give the Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.